*1089 OPINION.
Morris:
The petitioner contends that the profit, if any, from the sale of the tugboat Hercules was derived in 1918 and not in 1919; that the proceeding is barred by the statute of limitations; that it is not liable as a transferee within the meaning of section 280 of the Revenue Act of 1926; and that section 280 of the said Act is unconstitutional. We have previously considered whether the petitioner derived any gain in 1920 from the sale of the tugboat Hercules in The *1090 Shipowners & Merchants Tugboat Co., 4 B. T. A. 403. In that opinion we held that when the petitioner acquired the vessel1 or an interest in it, it paid its value and was charged with the knowledge of its sale and the incidental rights affected; that the cost to the petitioner was on the basis of a value for the whole vessel of $300,000; and that it made no profit when in 1920 it received no more than this. We did not consider how that view may affect the treatment of the old corporation in respect of the sale. It is this question limited by the determination of the respondent that the gain from the sale was derived by the old company in 1919 that we are called upon to consider in this proceeding. If the gain was not derived by the old company in 1919, the liability asserted by the respondent against this petitioner must fall.
The respondent’s theory of the case is that the old company transferred its assets to the petitioner on January 10, 1919, said assets having a market value of not less than $1,000,000, receiving in exchange therefor its capital stock having an equal par and market value, included among which- assets were the rights of the old company under the agreement of November 19, 1918, to receive the balance of the purchase price, together with the $50,000 already received on account, and, therefore, he contends, since the petitioner here paid the old company for its said rights with stock having a market value of $300,000, income was derived by the old company to the extent of the excess over and above the depreciated cost of the Hercules.
It would seem that a simple statement of the respondent’s position in the matter would immediately disclose its fallacies.
The respondent has computed the additional tax liability, not upon the sale of the old company’s contractual rights in the Hercules, but upon the profit alleged to have been derived by said old company from the sale of the boat itself, computed as follows:
Sale price_ $300,000
Cost_$197, 946. 74
Less:
Depreciation- 2,199.41
Depreciated cost_ 195,747.33
Taxable profit shown in deficiency notice_ 104, 252. 67
In other words, he has used as a basis the depreciated cost of one asset in determining the gain derived from the sale of a different asset. Upon his theory of the case a contractual right was transferred to the new company on January 10, 1919. Examining the facts, we find that right was acquired by the old company in exchange for the tugboat Hercules, which had a value at the date of *1091 the exchange of $800,000. It received therefor capital stock of the petitioner of equal value. The ultimate effect of the transfer was an even exchange of the contractual rights of the old company in the Hercules transaction for $300,000 par value of capital stock of the new company. Obviously, under this theory there can be no profit or loss upon the transaction.
The issue being whether the old company realized a profit in 1919 from the sale of the Hercules, the determination of the fallaciousness of the respondent’s theory is not dispositive of the question. The contract executed by the old company and Rolph for the sale of the Hercules provided for the immediate delivery of possession of the tugboat to the purchaser and for the payment by him of $50,000 upon the execution of the agreement and the balance on or before January 15, 1920, with interest thereon. The dominion, control, burdens, and benefits of the property passed to the purchaser in 1918. Although the legal title was retained by the vendor until the balance of the purchase price was paid, we are of the opinion that under the contract the profit realized on the sale of the boat is taxable in 1918 and not 1919. Grace Harbor Lumber Co., 14 B. T. A. 996, citing Davidson & Case Lumber Co. v. Motter, 14 Fed. (2d) 137.
Construing the reporting by the new company of the profit from the sale of the Hercules on the installment basis as an election by the old company to report the transaction on that basis,' it is clear that no profit would accrue to the old company on January 10,1919, on the exchange of Rolph’s installment obligations for the capital stock of the new company, as it was an intercompany transaction from which no gain or loss could arise. Fidelity National Bank & Trust Co., 14 B. T. A. 904; affd., 39 Fed. (2d) 58.
In view of our decision on the first issue it is unnecessary to discuss the other issues raised by the pleadings.

Judgment will be entered for the petitioner.